Scott Edelsberg, Esq.
California Bar: 330090
scott@edelsberglaw.com
**EDELSBERG LAW, PA**
20900 NE 30th Ave, Suite 417
Aventura, FL 33180
Telephone: 305-975-3320

Andrew J. Shamis, Esq. (*Pro Hac Vice to be filed*)
ashamis@shamisgentile.com
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: 305-479-2299
Facsimile: 786-623-0915

*Counsel for Plaintiff Joshua Matthews*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA MATTHEWS, individually and on behalf of all others similarly situated, | **Case No. 2:20-cv-07841-PA-JPR** |
| | **AMENDED CLASS ACTION COMPLAINT** |
| *Plaintiff,* | |
| vs. | **AMENDED COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227, ET SEQ. ("TCPA")** |
| MID CITY CANNABIS CLUB, INC. d/b/a LA BREA COLLECTIVE, a California corporation, | |
| *Defendant.* | **JURY TRIAL DEMANDED** |

**AMENDED CLASS ACTION COMPLAINT**

## AMENDED CLASS ACTION COMPLAINT

1.      Plaintiff, Joshua Matthews ("Plaintiff"), brings this action against Defendant, Mid City Cannabis Club, Inc. d/b/a La Brea Collective ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2.      This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* (the "TCPA").

3.      Defendant is a cannabis dispensary. To promote its services, Defendant engages in aggressive unsolicited marketing, harming thousands of consumers in the process.

4.      Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals.  Plaintiff also seeks statutory damages on behalf of himself and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

5.      This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA").

6.      The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers in this District, including Plaintiff.

## PARTIES

7.      Plaintiff is a natural person who, at all times relevant to this action, was a resident of Los Angeles County, California.

8. Defendant is a California corporation whose principal office is located at 5057 W Pico Blvd, Los Angeles, California 90019. Defendant directs, markets, and provides its business activities throughout the United States, including throughout the state of California.

9. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## THE TCPA

10. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

11. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

12. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

13. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone*

**AMENDED CLASS ACTION COMPLAINT**

*Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

14.    In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express ***written*** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

15.    To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

16.    The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

17.    "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'"  *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

18.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. §

**AMENDED CLASS ACTION COMPLAINT**

64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

19.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id.*

20.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

21.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

22.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the ***text message***) (emphasis added).

23.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation

1  under the TCPA 'need not allege any *additional* harm beyond the one Congress has

2  identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS

3  1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549

4  (2016) (emphasis original)).

5  **FACTUAL ALLEGATIONS**

6      24.    During December of 2019, Defendant sent the following telemarketing

7  text messages to Plaintiff's cellular telephone number ending in 2272 (the "2272

8  Number"):

9

10

11 

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

25.     Defendant's text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

26.     Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff cannabis products.

27.     The information contained in the text message advertises Defendant's various discounts and promotions, which Defendant sends to promote its business.

28.     Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.  Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

29.     Plaintiff is the subscriber and sole user of the 2272 Number and is financially responsible for phone service to the 2272 Number.

30.     At no point in time did Plaintiff provide Defendant with his express written consent to be contacted using an ATDS.

31.     More specifically, in or around December 2019, when Plaintiff visited Defendant's store, he verbally provided his 2272 Number to Defendant--but did not provide any form of express consent, written or otherwise, to be contacted at that number via an ATDS. Plaintiff's 2272 number, upon information and belief, was then added to Defendant's customer relationship management system. Defendant then downloaded a list of its customers' contact information from the system, uploaded that list of numbers to an ATDS or text-messaging platform having the capabilities of an ATDS, and then transmitted vast quantities of pre-scripted text messages to the cellular telephones of customers identified on that uploaded list, including Plaintiff. All customers received the same or similar autodialed text messages as did Plaintiff, and all customers were sent text messages in the same manner. As alleged, Defendant's text-messaging platform sends text messages "to a stored list of phone numbers," and

**AMENDED CLASS ACTION COMPLAINT**

therefore, qualifies as an ATDS under Ninth Circuit precedent. *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1053 (9th Cir. 2018)("Because we read § 227(a)(1) to provide that the term 'automatic telephone dialing system' means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers automatically (even if the system must be turned on or triggered by a person), we conclude there is a genuine issue of material fact as to whether the Textmunication system is an ATDS. The evidence in the record shows that the Textmunication system stores numbers and dials them automatically to send text messages to a stored list of phone numbers as part of scheduled campaigns. This is sufficient to survive summary judgment.").

32.    Furthermore, the form and the content of the messages, as well as the surrounding circumstances demonstrate that Defendant utilized an ATDS to transmit the messages referenced above.

33.    First, the impersonal and generic nature of the message demonstrates that Defendant utilized an ATDS in transmitting the messages. More specifically, the messages are impersonal and are scripted such that they are not addressed specifically to Plaintiff, *i.e.,* they do not begin with a salutation referencing Plaintiff's first or last name (i.e., "Dear Mr. Matthews"). Rather, they exclusively refer to the recipient of the message as "You". Here, none of the messages contain Plaintiff's first or last name, they also don't contain any other identifying information unique to only Plaintiff, such as an address, last four digits of a credit card number, or reference number. Crafted in this generic manner, the text message advertisements are optimized for mass delivery to thousands of individuals, making it at least plausible that they were sent via an ATDS. *See Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner); *see also Fishman v. Subway Franchise Advertising Fund*

**AMENDED CLASS ACTION COMPLAINT**

*Trust, Ltd.,* 2019 U.S. Dist. LEXIS 200710, 2019 WL 6135030, *8 (C.D. Cal. 2019) (finding ATDS allegations sufficient where plaintiff alleged "that T-Mobile used short message script messaging technology to transmit thousands of unsolicited messages").

34.    Second, the use of an ATDS is highly likely given that all of the message ask Plaintiff to reply with a one or two-word response to interact with message, or ask him to visit a hyperlink embedded in the message to obtain further information about promotions. Here, the messages contain generic opt-out instructions, ending the message by stating: "Reply 'STOP 5057' to Opt-out," and several of them ask Plaintiff to click on a hyperlink embedded in the message to review various promotions, *see supra* at ¶ 24( "VIEW FLYER HERE: https://ibb.co/BK8Hkg").  By asking Plaintiff to respond with a one or two-word, generic response to interact with the message, and by requesting that Plaintiff visit various website hyperlinks embedded within the body of the text message, the messages contains classic indicators that demonstrate that an ATDS was used. *See Meyer v. Bebe Stores, Inc.,* 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148, *4 (N.D. Cal. 2015)(finding that TCPA claim was sufficiently stated where complaint alleged that the recipient was asked to type a one-word response to interact with the text message.).

35.    Third, Defendant's messages "contained pro forma instructional commands" for opting out of further messages, which is yet another classic indicator of an ATDS. Specifically, Defendant's messages contained automated opt-out instructions, telling Plaintiff to "Reply 'STOP 5057' to Opt-out." The presence of this pro forma instructional command further strengthens the inference that an ATDS was used by Defendant to transmit these messages *See Abe v. Hyundai Motor America, Inc.,* 2019 WL 6647938, at *5 (C.D. Cal. 2019) (denying motion to dismiss because the complaint alleges the text messages "contained pro forma instructional commands for confirming or opting-out of further messages, thus indicating the use of an autodialer,"

and explaining that "inclusion of automated instructions [is] clear indicia of Defendant's use of an 'automated telephone dialing system'").

36.    Fourth, when considering the generic content of the messages collectively, they reflect the use of "form templates" designed for mass automated text campaigns. This is yet another factor that is highly "indicative of an ATDS" being used. *See Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1151 (9th Cir. 2019) (content reflecting use of automated templates supports inference of ATDS); *Abe v. Hyundai Motor America, Inc.*, 2019 WL 6647938, at *5 (explaining that through the use of template content, an ATDS "may automate 'even the aspects of the messages that appear personalized").

37.    The text messages originated from telephone number 844-694-0474, a number which upon information and belief is owned and operated by Defendant.

38.    The number used by Defendant (844-694-0474) is known as a "long code," a standard 10-digit code that enables Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

39.    Long codes work as follows:  Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic.  These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

40.    Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case.  The systems utilized by Defendant have the capacity to store telephone numbers using a random or sequential number generator, and to dial such numbers from a list without human intervention.

**AMENDED CLASS ACTION COMPLAINT**

41.     To send the text messages, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

42.     The Platform has the capacity to store telephone numbers, which capacity was in fact utilized by Defendant.

43.     The Platform has the capacity to generate sequential numbers, which capacity was in fact utilized by Defendant.

44.     The Platform has the capacity to dial numbers in sequential order, which capacity was in fact utilized by Defendant.

45.     The Platform has the capacity to dial numbers from a list of numbers, which capacity was in fact utilized by Defendant.

46.     The Platform has the capacity to dial numbers without human intervention, which capacity was in fact utilized by Defendant.

47.     The Platform has the capacity to schedule the time and date for future transmission of text messages, which occurs without any human involvement.

48.     To transmit the messages at issue, the Platform automatically executed the following steps:

      a)  The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;

      b)  The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;

      c)  Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

**AMENDED CLASS ACTION COMPLAINT**

d) Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant. Each mobile carrier then sent the message to its customer's mobile telephone.

49. The above execution these instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

50. Further, the Platform "throttles" the transmission of the text messages depending on feedback it receives from the mobile carrier networks. In other words, the platform controls how quickly messages are transmitted depending on network congestion. The platform performs this throttling function automatically and does not allow a human to control the function.

51. The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



52. Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

**AMENDED CLASS ACTION COMPLAINT**

53.     Defendant's unsolicited text messages caused Plaintiff actual harm. Specifically, Plaintiff estimates that he has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages.  Each time, Plaintiff had to stop what he was doing to either retrieve his phone and/or look down at the phone to review the message.

54.     Next, Plaintiff wasted approximately fifteen minutes locating and retaining counsel for this case in order to stop Defendant's unwanted calls.

55.     In all, Defendant's violations of the TCPA caused Plaintiff to waste at least fifteen minutes of his time in addressing and attempting to stop Defendant's solicitations.

## CLASS ALLEGATIONS

### PROPOSED CLASS

56.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

57.     Plaintiff brings this case on behalf of the Class defined as follows:

> **No Consent Class: All persons in the United States who, within four years prior to the filing of this action, (1) were sent a text message by or on behalf of Defendant, (2) using an automatic telephone dialing system, (3) for the purpose of soliciting Defendant's goods and services, (4) without prior express consent of the recipient, or with the same manner of purported consent Defendant claims to have obtained from Plaintiff, if any.**

58.     Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

59.     Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the

AMENDED CLASS ACTION COMPLAINT

United States without their prior express consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

60.     The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

## COMMON QUESTIONS OF LAW AND FACT

61.     There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the members of the Class are:

a)  Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

b)  Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

c)  Whether Defendant's conduct was knowing and willful;

d)  Whether Defendant is liable for damages, and the amount of such damages; and

e)  Whether Defendant should be enjoined from such conduct in the future.

62.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

63.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**AMENDED CLASS ACTION COMPLAINT**

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

64.    Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

65.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

66.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.   For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.   Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the Class)

67.    Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

68.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using

any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service ….” 47 U.S.C. § 227(b)(1)(A)(iii).

69.    Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

70.    These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

71.    Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

72.    Defendant knew that it did not have prior express consent to make these calls, and it knew or should have known that it was using equipment that constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

73.    As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the members of the Class are also entitled to an injunction against future calls. *Id.*

**COUNT II**
**<u>Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)</u>**
**(On Behalf of Plaintiff and the Class)**

74.    Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

**AMENDED CLASS ACTION COMPLAINT**

75.     At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

76.     Defendant knew that it did not have prior express consent to make these calls, and it knew or should have known that its conduct was a violation of the TCPA.

77.     Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

78.     As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a)  An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b)  An award of actual and statutory damages for Plaintiff and each member of the Class;

c)  As a result of Defendant's negligent violations of 47 U.S.C. §§ 227, *et seq.*, Plaintiff seeks for himself and each member of the Class $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 277(b)(3)(B);

d)  As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §§ 227, *et seq.*, Plaintiff seeks for himself and each member of the Class treble damages, as provided by statute, up to $1,500.00 for each and every violation pursuant to 47 U.S.C. § 277(b)(3)(B) and § 277(b)(3)(C);

**AMENDED CLASS ACTION COMPLAINT**

e)  An order declaring that Defendant's actions, as set out above, violate the TCPA;

f)  A declaratory judgment that Defendant's telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

g)  An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Class;

h)  An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, recipient's consent to receive calls made with such equipment;

i)  An award of reasonable attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5; and

j)  Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.


Dated: November 23, 2020

Respectfully submitted,


*/s/ Scott Edelsberg*
**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq.
California Bar No. 330990
scott@edelsberglaw.com
20900 NE 30th Ave., Suite 417
Aventura, FL 33180

*Counsel for Plaintiff and the Proposed Class*

**AMENDED CLASS ACTION COMPLAINT**